

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MICHELLE BUCHANAN, ) | |
| ) | |
| Plaintiff, ) | Case No. 07 C 4189 |
| ) | |
| v. ) | Magistrate Judge |
| ) | Martin C. Ashman |
| WHOLE FOODS MARKET GROUP, INC., ) | |
| A Foreign corporation d/b/a ) | |
| WHOLE FOODS MARKETS, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Michelle Buchanan ("Buchanan") sued Whole Foods Market Group, Inc., d/b/a Whole Foods Markets, Inc. ("Defendant"), in 2007 after slipping in one of Defendant's stores. Defendant filed a motion for summary judgment on January 14, 2009. The parties consented to have this Court conduct any and all proceedings in this case, including the entry of final judgment. *See* 28 U.S.C. § 636(c) and Local Rule 73.1. For the reasons stated below, the Court denies Defendant's motion.

### I. Background

The facts the Court recites here are undisputed and are drawn from Buchanan's and Defendant's Statements of Facts.[1]

---

[1] Prior to explaining the facts, the Court addresses one matter. Although Buchanan substantially complied with Local Rule 56.1(b) by filing a response to Defendant's Statement of Facts, which contained additional facts, her response was deficient in two respects. First, Buchanan's "new facts" are, in reality, denials of Defendant's statements. Buchanan should have

(continued...)

This is a tort case. On April 11, 2005, Buchanan decided to buy a few groceries: fish, salad, and fish-fry batter. (Def.'s Statement of Facts ("Def.'s SOF") ¶ 9.) To achieve that aim, she ventured to one of Defendant's many grocery stores, located at 30 West Huron Street, Chicago, Illinois. (Def.'s SOF ¶¶ 1, 9.) She succeeded in acquiring the first two items (fish and salad), which she carried in one hand, but had trouble locating the batter. (Def.'s SOF ¶ 10.) While searching, she noticed one of Defendant's employees on a step ladder[2] located about four feet from the end of an aisle. (Def.'s SOF ¶ 11; Buchanan Dep. 53:1-3.) Buchanan and the employee were the only two people present in the well-lit, six-foot-wide aisle. (Def.'s SOF ¶¶ 34, 35, 37.) Buchanan approached the employee and asked where she could find fish batter. (Def.'s SOF ¶¶ 11-12.)

The employee stopped his current task of stocking shelves, descended the step ladder, and agreed to show her the location of the batter. (Def.'s SOF ¶ 13; Buchanan Dep. 51:11-53:12.) The employee then walked Buchanan approximately six feet down the aisle to the shelf on which the

---

[1](...continued)
explained her denials in response to Defendant's statements–or, if she wished to present new facts, she should have done so in a non-argumentative and straightforward manner.

Second, and more importantly, some of Buchanan's denials do not "includ[e] . . . specific references to the affidavits, parts of the record, and other supporting materials relied upon," as Local Rule 56.1(b)(3)(B) requires. As a result, those facts are deemed admitted. *Cichon v. Exelon Generation Co., L.L.C.*, 401 F.3d 803, 808 (7th Cir. 2005) (noting that the non-movant "attempt[ed] [to] oppos[e] [the movant's] statement of material facts . . . [by making] conclusory statements, unaccompanied by required record citations," and by engaging in "cursory analysis with citations to portions of the record that failed to support his denials, [which] constitut[ed] a violation of Local Rule 56.1") Specifically, these admitted facts are those contained in Defendant's Statement of Facts with the following paragraph numbers: 17, 26, 29, 30, 32, and 33.

[2] Buchanan admits that the employee was on a "step ladder" (Def.'s SOF ¶ 11), but in her deposition she said the employee was on a "stool" (Buchanan Dep. 50:9, December 18, 2007).

fish batter was located. (Def.'s Resp. to Pl.'s Additional Facts ¶ 39; Buchanan Dep. 57:4-10.) During this short trip, the employee and Buchanan, who did not look at the floor while she walked, remained about arm's length apart.[3] (Def.'s SOF ¶ 36; Buchanan Dep. 54:15-56:9.) Once they reached the fish batter, the employee removed the product from the shelf and handed it to Buchanan. (Def.'s SOF ¶ 14.) As Buchanan, who remained stationary, grasped the batter, her right foot, which donned a shoe with a three to three and one-half inch heel, slid out from underneath her and lost contact with the floor. (Def.'s SOF ¶¶ 15-16, 18.) In the course of this movement, Buchanan twisted her right knee and also injured her ankle. (Def.'s SOF ¶ 19; Buchanan Dep. 20:11-24.) After regaining her balance, she looked at her feet–she observed her "heel . . . caught in [a] [Dixie] cup" and some liquid on the floor and some in the cup. (Def.'s SOF ¶¶ 18-20; Buchanan Dep. 71:23-74:4.)

The Dixie cup, which bore the label "Argo" and resembled the cup dentists' patients use to rinse out their mouths, measured approximately one inch in height and one inch in diameter. (Def.'s SOF ¶¶ 21, 23.) While Buchanan does not know "what caused either the Dixie cup or liquid to come to rest on the floor or how it came to be that these items were present on the floor," individuals at Defendant's store were handing out these cups, which contained samples of Argo Tea.[4] (Def.'s SOF ¶¶ 27-30.) The amount of liquid on the floor equaled approximately

---

[3] Buchanan's deposition testimony reveals that she stated three times that the employee was ahead of her, and two times stated that she didn't recall whether she and the employee walked side-by-side or in some other fashion.

[4] At oral argument, Defendant's attorney conceded that, while not Defendant's employees, the individuals handing out Argo Tea samples had Defendant's permission to do so.

one-half of the volume of the cup. (Def.'s SOF ¶ 24.) The liquid on the floor was "not 'disturbed' and had no skid marks, smears, or shoe prints in it." (Def.'s SOF ¶ 26.)

Buchanan does not know for how long the Dixie cup or the liquid were on the floor prior to the time she slipped. (Def.'s SOF ¶ 31.) Indeed, Buchanan does not posses any information that an employee of Defendant caused the cup or the liquid to be on the floor.

As a result of these events, Buchanan filed a lawsuit against Defendant in the Circuit Court of Cook County on January 19, 2007. Several months later Defendant received a document it believed gave the federal courts jurisdiction over Buchanan's claim, and, on July 24, 2007, Defendant filed a notice of removal under 28 U.S.C. § 1446(b). The district judge granted removal and dismissed the state law complaint. Buchanan filed an amended complaint on August 14, 2007. Defendant filed a motion for summary judgment on January 14, 2009.

## II. Summary Judgment Standard

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and affidavits show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court views all facts in the light most favorable to Buchanan and draws all justifiable inferences in her favor. *Anderson*, 477 U.S. at 255. Not all factual disputes will preclude summary judgment; rather, a genuine issue of material fact will exist only where there is evidence such that a jury "could reasonably find for the [nonmoving party]." *Id.* The parties may not rely on mere allegations or speculation in arguing for or against summary judgment. *See*

*Argyropoulos v. City of Alton*, 539 F.3d 724, 737 (7th Cir. 2008). At the summary judgment stage, both sides must support their factual assertions with "competent evidence of a type otherwise admissible at trial." *Lewis v. City of Chicago*, 496 F.3d 645, 651 (7th Cir. 2007). The burden of production is on the nonmovant to "set forth specific facts showing a genuine issue for trial" or else face an entry of summary judgment. FED. R. CIV. P. 56(e)(2); *Warren v. Solo Cup Co.*, 516 F.3d 627, 629 (7th Cir. 2008). In this case, as noted below, this means that Buchanan must set forth specific facts showing that (1) Defendant owed Buchanan a duty, and (2) Defendant's breach proximately caused Buchanan's injury.

### III. Discussion

Although the law in this area is far from complex, there is one preliminary matter to which the Court must tend: the governing law. In a diversity case, the court applies the substantive law of the forum state. *Mass. Bay Ins. Co. v. Vic Koenig Leasing, Inc.*, 136 F.3d 1116, 1120 (7th Cir. 1998) (reaffirming the general principle from *Wood v. Mid-Valley, Inc.*, 942 F.2d 425, 426 (7th Cir. 1991), that federal courts apply the law in which the court sits absent a conflict between the parties). Because Buchanan filed her tort claim in Illinois and neither party contests the issue of which law governs, the Court applies Illinois law. The Court decides this matter as it believes the Illinois Supreme Court would. *Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1090 (7th Cir. 1999) ("As a court sitting in diversity, we attempt to predict how the [state's] [s]upreme [c]ourt would decide the issues presented here."). To make this assessment, the Court gives "'proper regard' to other Illinois courts' rulings." *Estate of Bowgren v. Comm'r of Internal Revenue*, 105 F.3d 1156, 1161 (7th Cir. 1997). In other words, "[w]here the

state supreme court has not ruled on an issue, decisions of the state appellate courts control, unless there are persuasive indications that the state supreme court would decide the issue differently." *Lexington*, 165 F.3d at 1090.

As to the merits of this motion, Buchanan contends that Defendant breached the duty of care owed to her while in Defendant's store, causing her to injure her knee and ankle.

To prove a negligence claim under Illinois law, the plaintiff must show that (1) the plaintiff suffered an injury; (2) the defendant owed the plaintiff a duty of care; (3) the defendant breached that duty of care; and (4) the defendant's breach proximately caused the plaintiff's injury. *Marshall v. Burger King Corp.*, 856 N.E.2d 1048, 1053 (Ill. 2006). Defendant does not dispute that Buchanan suffered an injury or that Defendant, if it owed Buchanan a duty, breached its duty. Therefore, the Court addresses only the remaining two elements required to prove premises liability: duty and causation.

### A. Duty

Defendant argues it did not owe Buchanan a duty for two reasons. First, Defendant contends it did not have knowledge of the Dixie cup's presence. (Def.'s Mem. in Supp. of Mem. ("Def.'s Mem.") 5-8.) Second, Defendant argues that the Dixie cup was an "open and obvious condition," and, therefore, precludes Buchanan's recovery. (Def.'s Mem. 3-5.) Buchanan replies with two arguments. First, she contends that Defendant had constructive knowledge of the Dixie cup and, therefore, owed her a duty. (Pl.'s Mem. in Resp. to Def.'s Mem. ("Pl.'s Resp.") 7-9.) Second, Buchanan responds that, even if the Dixie cup constituted an "open and obvious

condition," she can still recover because she was "distracted" when she was injured. (Pl.'s Resp. 5-7.)

Illinois courts determine the existence of a duty based on the following factors: (1) reasonable foreseeability of the harm; (2) the likelihood that plaintiff would suffer an injury; (3) the magnitude of the burden on the defendant of guarding against the injury; and (4) the consequences of placing the burden on the defendant. *Rexroad v. City of Springfield*, 769 N.E.2d 1040, 1046 (Ill. 2003); *Staples v. Krack Corp.*, 186 F.3d 977, 979 (7th Cir. 1999) (quoting *LaFever v. Kemlite*, 706 N.E.2d 441, 446 (Ill. 1998)). At bottom, foreseeability is the "cornerstone of [the] duty analysis." *Grant v. South Roxana Dad's Club*, 886 N.E.2d 543, 549 (Ill. App. Ct. 2008) (citing *Corcoran v. Village of Libertyville*, 383 N.E.2d 177, 180 (Ill. 1978)).

The Illinois Supreme Court has stated the issue of premises liability this way: "whether defendant and plaintiff stood in such a relationship to one another that the law imposed upon defendant an obligation of reasonable conduct for the benefit of plaintiff." *Ward v. K Mart Corp.*, 554 N.E.2d 223, 226 (Ill. 1990). Where the defendant is a possessor of land[5] and has knowledge of a dangerous condition on the premises, the defendant owes the plaintiff a duty of care. *Wiegman v. Hitch-Inn Post of Libertyville, Inc.*, 721 N.E.2d 614, 625 (Ill. App. Ct. 1999). That rule, however, does not apply in all cases. If the possessor had knowledge of a dangerous condition that was open or obvious to the plaintiff, the law generally does not impose a duty upon the possessor. *Sollami v. Eaton*, 772 N.E.2d 215, 223 (Ill. 2002) (quoting RESTATEMENT (SECOND) OF TORTS § 343A(1) (1965)). The Court now explores both of these legal issues.

---

[5] For brevity, the Court refers to a possessor of land as, "the possessor" or, "the proprietor."

### 1. Constructive Notice

If a plaintiff injures herself by slipping on a foreign substance on the possessor's land, the law imposes liability on the possessor in either of two circumstances: (1) where the proprietor or its servants, by their negligence, placed the substance in its location; or (2) where the proprietor or its servants has knowledge or notice of the substance's presence, and "the substance was on the premises through acts of third persons or there is no showing of how it got there." *Wiegman*, 721 N.E.2d at 625.[6] Buchanan failed to offer any evidence that Defendant or its servants placed the substance in its location. For that reason, the only issue is whether Defendant had knowledge of the Dixie cup's presence.

Knowledge can be actual or constructive. *Id.* (stating that "liability may be imposed if it appears the proprietor or [its] servant knew of its presence, or . . . the substance was there a sufficient length of time so that in the exercise of ordinary care its presence should have been discovered"). Since Buchanan offered no evidence showing Defendant had actual knowledge, the Court focuses on whether Defendant had constructive knowledge of the Dixie cup.

The law presumes the possessor has "constructive notice of all conditions discoverable by reasonable inspection of the premises." *Lombardo v. Reliance Elevator Co.*, 733 N.E.2d 874, 881-82 (Ill. App. Ct. 2000). The plaintiff can show constructive knowledge by "establishing that the condition persisted long enough that the defendant should have discovered the condition

---

[6] A plaintiff also can show the existence of a duty with "proof that the foreign substance was a product sold or related to the defendant's operations," coupled with further evidence, "however slight, . . . from which it could be inferred that it was more likely that the defendant or his servants, rather than a customer, dropped the substance on the premises." *Wiegman*, 721 N.E.2d at 625. That is not the situation in this case. Buchanan has not argued this position and has offered no such evidence. In any case, the resolution of this issue does not affect the outcome of this case.

- 8 -

through the exercise of reasonable care." *Id.* at 882; *Richardson v. Bond Drug Co. of Ill.*, 901 N.E.2d 973, 976 (Ill. App. Ct. 2009) ("Nevertheless, even where there is no showing as to how the substance got on the floor, liability may be imposed if it appears that the owner or his employees knew of its presence, or the substance was there a length of time so that, in the exercise of ordinary care, its presence should have been discovered."). This inquiry turns on the ability of the parties to notice or observe the dangerous condition. *Smolek v. K.W. Landscaping*, 639 N.E.2d 974, 978 (Ill. App. Ct. 1994).

In *Smolek*, the plaintiff was a resident at a complex operated by the defendant. *Id.* at 976. The plaintiff injured herself while walking her dogs when her foot became caught in a hole on the defendant's complex. *Id.* Although *Smolek* concerned an "inconspicuous danger"–vegetation had grown over the hole and concealed it–the principle it articulated informs this Court's decision: "a plaintiff's lack of knowledge about an inconspicuous danger will not bar recovery where the *landowner is in a better position to discover the condition or is aware of some fact that puts him on notice* of the potential existence of the condition." *Id.* at 978 (emphasis added). The *Smolek* court found, however, that the defendant did not have constructive knowledge because the plaintiff "walked in this area several times each day and therefore was in an *equally good position* to discover the hole." *Id.* (emphasis added). As a result, "[the plaintiff's] failure to discover the hole indicates that the [defendant] would not have discovered it through the exercise of reasonable care." *Id.*

The Court finds this principle–the "principle of equal footing"–to be dispositive in this case. Here, Buchanan was not in an "equally good position to discover" the Dixie cup. *Id.* Defendant and its employees knew that individuals were handing out samples of Argo Tea and,

therefore, knew that some of those samples might find their way onto Defendant's floor. Furthermore, Defendant's position as a merchant, whose employees are familiar with the store and whose duties include ensuring store safety, should have greater awareness of Defendant's store conditions than a customer.

The fact that one of Defendant's employees was physically present in the aisle where the Dixie cup was located strengthens this inference. This employee was stocking shelves in this aisle before Buchanan entered it. And, after Buchanan asked the employee to show her the location of the fish batter, the employee walked past the Dixie cup. Buchanan's failure to discover the Dixie cup does not, as it did in *Smolek*, show that Defendant "would not have discovered [the cup] through the exercise of reasonable care." *Id.* Instead, there exists a genuine issue of material fact about whether Defendant should have known about the Dixie cup's presence because Defendant operated the store and had sanctioned the distribution of Argo Tea; because Defendant's employee was present in the aisle prior to the accident; and because Defendant's employee walked past the Dixie cup.

Defendant contends that the proximity of its employee to the dangerous condition is irrelevant to a court's determination of constructive knowledge. (Def.'s Reply 8-9 (citing *Benware v. Big V Supermarkets, Inc.*, 576 N.Y.S.2d 461, 463 (N.Y. App. Div. 1991) (stating that "the fact that certain of defendant's employees were stationed near the site of the accident does not suffice to establish constructive notice"); *Strowman v. Great Atlantic and Pacific Tea Co.*, 675 N.Y.S.2d 82, 83 (N.Y. App. Div. 1998) (stating that "the fact that defendant's employees may have been in the vicinity of the accident [is not] sufficient to establish constructive notice"); *Gillespie v. Wal-Mart Stores, Inc.*, 394 S.E.2d 24, 25 (S.C. Ct. App. 1990) ("The mere fact that water was on

the floor of the store and was within the field of vision of a nearby store employee at the time [the plaintiff] slipped upon it is not by itself enough evidence to charge [the defendant] with negligence."); *H.E.B. Foods, Inc. v. Moore*, 599 S.W.2d 126, 129 (Tex. App. 1980) ("The mere fact that a foreign substance is on the floor of a store, [in this case water,] which caused the floor to become slippery, and that a store employee is in the immediate vicinity at the time the plaintiff fell, is not sufficient evidence, standing alone, to raise an inference that . . . the substance had been there for a sufficient length of time that such store employee would or should have discovered and removed the substance, had he used ordinary care."); *Kroger Grocery & Banking Co. v. Spillman*, 130 S.W.2d 786, 787 (Ky. Ct. App. 1939)).

The Court first observes that one of the cases Defendant cites has been overruled by the Kentucky Supreme Court, which adopted a view opposite to Defendant's position. *Spillman*, 130 S.W.2d at 787, *overruled by Lanier v. Wal-Mart Stores, Inc.*, 99 S.W.3d 431, 435 (Ky. 2003) (holding that, "[t]o balance the competing principles of notice versus duty, the issues of causation and notice should be treated not as elements of the customer's case, but as affirmative defenses of the proprietor"). It also notes that contrary authority exists in other jurisdictions. *E.g., Shepard v. Winn Dixie Stores, Inc.*, 527 S.E.2d 36, 38 (Ga. Ct. App. 1999) (stating that, "[t]o establish constructive knowledge, [the plaintiff] must show that . . . [the defendant's] employee was in the immediate area of the hazard and could have easily seen the substance"); *see also Martin v. Wal-Mart Stores, Inc.*, 183 F.3d 770, 773 (8th Cir. 1999) (applying Missouri law and stating that, when determining constructive notice, "[t]he amount of time is even less important if there is evidence that employees of the store were regularly in the area where the accident occurred"). Regardless, the cases Defendant cites are distinguishable. In none of them did the defendant's

employee walk past the hazard in question, as did Defendant's employee while escorting Buchanan to the fish batter.

These points notwithstanding, the Court finds Illinois law does not support Defendant's position. Illinois courts, when determining constructive knowledge, have focused on the parties' ability to notice the dangerous condition. As a result, the Court considers the employee's proximity to the dangerous condition as a factor in the constructive knowledge calculus. Defendant's employee was both in the vicinity of, and walked by, the Dixie cup. Buchanan was looking for and carrying groceries, as well as watching the employee. Defendant was in a better position than Buchanan to discover the hazard. Therefore, the Court finds that there is a genuine issue of material fact as to whether Defendant had constructive knowledge of the Dixie cup's presence.

### 2. Open and Obvious Condition

Although the Court found that a genuine issue of material fact exists as to whether Defendant had constructive notice of the Dixie cup, it assumes the opposite for the purposes of this section. With that assumption in mind, the Court determines whether Defendant owed Buchanan a duty. Defendant claims that no duty existed because the condition was "open and obvious." (Def.'s Mem. 3.) Buchanan counters that, even if the condition was open and obvious, the distraction exception applies.[7] (Pl.'s Resp. 5.) For the purposes of this section, the Court

---

[7] Buchanan also makes the following misguided argument in a confusing, run-on sentence: "By alleging that the condition that caused BUCHANAN's [*sic*] injuries was open and obvious[,] Defendant . . . essentially argu[es] that the condition was so obvious that it was noticeable to everyone, thus negating the argument that Defendant . . . did not have notice of the
(continued...)

assumes, without deciding, that the Dixie cup constituted an open and obvious condition.

Under Illinois law, a possessor of land is not liable for injuries to invitees or licensees resulting from dangerous conditions that are known or obvious to the invitees or licensees. *Sollami v. Eaton*, 772 N.E.2d 215, 223 (Ill. 2002) (quoting RESTATEMENT (SECOND) OF TORTS § 343A(1) (1965)). That rule, however, is not without exceptions, one of which–known as the "distraction exception"–applies when "the possessor [of land] has reason to expect that the invitee's attention may be distracted[] so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it." *Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 343A(1), comment *f*, at 220 (1965)); *Rexroad*, 769 N.E.2d at 1046.

Two cases illustrate this principle as it applies to this case: *Ward*, 554 N.E.2d at 229-30, and *Rexroad*, 769 N.E.2d at 1047. In *Ward*, the plaintiff, a customer in defendant's store, injured his eye when he walked into a post outside the store while carrying a mirror he purchased inside. *Id.* at 224-26. The plaintiff testified that he had seen the post when entering the store, and that, while exiting, the mirror he carried blocked his view. *Id.* at 225. The Court first noted that "'where there is reason to expect that the invitee's attention will be distracted, as by goods on

---

⁷(...continued)
condition[,] especially since its employee walked through that location before . . . [Buchanan] while directing her to the fish batter display." (Pl.'s Resp. 6.) That argument misunderstands the open and obvious rule, which, if applied, absolves the defendant of liability: if the dangerous condition is open and obvious, the defendant, regardless of its knowledge of the condition, is not liable for the plaintiff's injuries resulting from that condition. The reason is obvious: because a reasonable person would protect themselves from the danger posed by the condition, the defendant cannot reasonably anticipate that the condition will cause an injury. *Ward*, 554 N.E.2d at 230 (stating that no liability obtains because the defendant "could not reasonably be expected to anticipate that people will fail to protect themselves from any danger posed by the condition"). The open and obvious rule does, however, have two exceptions, one of which the Court explores above.

display,'" "'something more in the way of precautions may be required.'" *Id.* at 230 (quoting W. KEETON, PROSSER & KEETON ON TORTS § 61, at 427 (5th ed. 1984)). The court then found that the defendant could be liable because "[it] had reason to anticipate that customers shopping in the store would, even in the exercise of reasonable care, momentarily forget the presence of the posts [that] they may have previously encountered by entering through the customer entrance door." *Id.* at 233. The court also noted that the burden of protecting against this hazard would be slight. *Id.*

In *Rexroad*, the plaintiff, a student-manager of a high school football team, injured his ankle while retrieving a helmet from the locker room. 769 N.E.2d at 1042. On his way back from the locker room, the plaintiff stepped into a hole, which he had noticed earlier that day, in a parking lot. *Id.* at 1042. In applying the distraction exception, the court stated the record contained "some evidence" showing "[i]t was reasonably foreseeable that students may fail to avoid the risk posed by the hole by becoming distracted or momentarily forgetful," citing for support the plaintiff's testimony that he was focused on carrying the football helmet to the player. *Id.* at 1047. The court also noted that an ankle injury "is the kind of injury likely to result from unexpectedly stepping into a hole." *Id.* Furthermore, guarding against the injury did not impose a large burden upon the defendants. *Id.* Therefore, the court denied the defendants' motion for summary judgment. *Id.*

These cases compel this Court to conclude that, even if the Dixie cup was an open and obvious condition, the distraction exception applies. As noted by the court in *Ward*, goods on display can distract the attention of customers who would otherwise notice a dangerous condition. In *Ward*, the plaintiff was carrying an item that distracted him from, or obscured his

view of, the post. In this case, the plaintiff was carrying two grocery items, looking for fish batter, and following one of Defendant's employees to the batter's location. All of these facts distracted Buchanan's attention from the Dixie cup. The Court finds that these distractions fall within the rule contemplated by Illinois law.

Furthermore, Buchanan had even less notice of the dangerous condition than the plaintiffs in *Ward* or *Rexroad*, cases in which the court held that the distraction exception applied. While the plaintiffs in *Ward* and *Rexroad* had seen the hazards prior to being injured by them, Buchanan did not have prior notice of the Dixie cup's presence. The first time she noticed the Dixie cup was after she twisted her knee–she looked down and saw the cup caught in her shoe. Therefore, the court finds that Defendant cannot escape liability by claiming the Dixie cup was an open and obvious condition because the distraction exception applies.

Defendant's argument that *Auguste v. Montgomery Ward & Co.*, 629 N.E.2d 535, 538 (Ill. App. Ct. 1994), applies is unavailing. In *Auguste*, the plaintiff slipped on a metal plate in front of a non-operating escalator, causing her to fall down the escalator and injure her back. *Id.* at 537. But the court did not hold, as Defendant suggests, that the distraction exception fails to apply where "the plaintiff . . . look[s] in a different direction or at something other than the alleged dangerous condition [that] caused" the injury. (Def.'s Reply 4.) Instead, the court stated that the "plaintiff's failure to notice the stopped escalator arose . . . from her own lack of attention to her surroundings" when she failed to look at the stopped escalator and assumed it would be operating. *Auguste*, 629 N.E.2d at 538. In other words, nothing distracted the plaintiff: she was not window shopping, looking for items in a store, or retrieving an item from a shelf. She walked

to an escalator without paying attention, merely "encountering," as the court stated, "a stationary stairway accompanied by all of the normal risks associated with any other stairway." *Id.*

Here, by contrast, Buchanan not only carried groceries, she was following Defendant's employee and looking for an item to purchase. Her failure to notice the Dixie cup resulted from a number of distractions that fall within the exception, not from a "lack of attention to her surroundings." *Id.* Unlike the plaintiff in *Auguste*, Buchanan did not merely "encounter" a normal Dixie cup. Here the Dixie cup lay in the aisle of a grocery store, and Buchanan stepped on it while being led to a destination by Defendant's employee. Most importantly, Buchanan slipped *while reaching for the batter* that Defendant's employee handed to her. Not only was it nearly impossible for her to have seen the Dixie cup at this point, but Defendant's employee was the individual distracting her from doing so.

Additionally, like the ankle injury in *Rexroad*, Buchanan's knee injury is the kind one would expect the dangerous condition, here the Dixie cup, to cause. Moreover, the burden of guarding against this kind of injury, by, for instance, being more vigilant or cleaning the aisles at more frequent intervals, is minimal. Finally, the consequences of placing the burden on Defendant will provide an incentive for its employees to constantly inspect the area in which they work. For these reasons, the Court finds there is a genuine issue of material fact as to whether Defendant owed Buchanan a duty.

Before leaving this section, one final point must be made. At oral argument, Defendant argued that the distraction exception should apply equally to Defendant and Buchanan. In other words, Defendant contends that if Buchanan was distracted by looking for certain goods, so was Defendant's employee, and the exception should, therefore, apply to both of them. Defendant

suggested, in part, that this exception should apply because the inference of distraction must be the same for both parties; that is, if the Court draws an inference, it must consistently apply that inference to all arguments in the case. This argument is misguided for three reasons.

First, Defendant's argument confuses two different factual inferences. The inference made to establish that Buchanan was distracted is separate and distinct from the inference made to establish Defendant's employee was distracted.

Second, even if, as Defendant suggests, those two inferences are the same in every case, Defendant's argument would fail. To hold otherwise would mean that the distraction exception *never* would apply to the plaintiff. Put another way, if the law presumed that the defendant is distracted whenever the plaintiff is distracted, and the distraction exception applies to both parties, the plaintiff never can successfully utilize this theory of liability. The defendant would, in every case in which the plaintiff was distracted, claim that it had no liability because the distraction exception applied equally to it.

Third, and most importantly, Defendant's argument wrongly assumes that the distraction exception applies to Defendants. It does not.[8] The distraction exception asks whether, despite the open and obvious nature of the dangerous condition, *the plaintiff* was distracted; whether the defendant also was distracted is irrelevant to this inquiry. Thus, it is immaterial whether Defendant was distracted at the same time as Buchanan. For these reasons, the Court rejects Defendant's arguments and finds that a genuine issue of fact exists as to whether Defendant owed Buchanan a duty.

---

[8] Defendant has not pointed this Court in the direction of any case law extending this exception to defendants, and the Court has found none.

## B. Causation

Finally, Defendant argues that Buchanan cannot prove that the Dixie cup and accompanying liquid was the proximate cause of her injury. (Def.'s Mem. 8.) In other words, Defendant's primary argument is that Buchanan cannot establish that the Dixie cup and liquid caused her to slip and injure her knee and ankle.[9] (*Id.*) What caused Buchanan to slip, Defendant argues, could have been any number of things, such as the type of shoe she wore, the material out of which her shoe was made, and the height of the heel on her shoe. (Def.'s Reply 11.) Buchanan, of course, disagrees, arguing that she put forth enough evidence such that a reasonable jury could conclude the Dixie cup caused her injuries. (Pl.'s Resp. 10.)

To survive a motion for summary judgment, the plaintiff must put forth evidence showing that the defendant's breach proximately caused the plaintiff's injury. *Bourgonje v. Machev*, 841 N.E.2d 96, 116 (Ill. App. Ct. 2005). To show proximate cause, the plaintiff must "show that the defendant's negligence was (1) the actual cause or the cause in fact of his injury, i.e., but for the defendant's conduct, the accident would not have occurred; and (2) the legal cause of his injury, i.e., the defendant's conduct was so closely tied to the plaintiff's injury that he should be held legally responsible for it." *Id.* (quoting *McCraw v. Cegielski*, 680 N.E.2d 394, 396 (Ill. App. Ct. 1996)).

---

[9] Defendant's causation argument addresses whether "the foreign substance was a proximate cause of the" Buchanan's injury. (Def.'s Mem. 8; Def.'s Reply 10.) That is a slight misstatement of the proximate causation analysis, which focuses on whether the defendant's *breach* proximately caused the injury, not whether the dangerous condition, in isolation, caused the injury. Defendant conceded that a genuine issue of material fact exists as to its breach when it failed to argue otherwise. Because of this concession, the manner in which Defendant's framed the issue does not affect the Court's assessment of whether Defendant's breach–i.e., it failure to make the aisle reasonably safe by removing the Dixie cup–proximately caused Buchanan's injury.

Neither of these inquiries consumes much of the Court's time. First, but for the Dixie cup's presence on the ground, Buchanan would not have slipped and injure herself. Therefore, Buchanan has shown that Defendant's breach was the actual cause of her injury. Second, at the very least, the evidence here creates a genuine issue of material fact about whether the Dixie cup proximately caused the injury. Buchanan testified that after she slipped, she saw the Dixie cup caught in the heel of her shoe.

Nevertheless, Defendant vociferously contended at oral argument that any number of things could have caused Buchanan to slip and injure herself. The Court cannot, with a straight face, agree with Defendant's argument. It is absurd to suggest, as Defendant does, that "more than one possible cause[] of [this] accident can be inferred from the same set of facts with equal certainty." (Def.'s Mem. 9.) Based on these facts, a reasonable jury could not infer that Buchanan injured her knee because of, for example, her shoe's material with the same degree of certainty as it could infer that the Dixie cup caused Buchanan to slip and injure her knee. This case is not, as Defendant argues, one where the plaintiff merely assumed, without actually knowing, that a floor was wet, *Barker v. Eagle Food Ctrs.*, 634 N.E.2d 1276, 1279 (Ill. App. Ct. 1994), that a carpet's edge had flared, *Koukoulomatis v. Disco Wheels, Inc.*, 468 N.E.2d 477, 482 (Ill. App. Ct. 1984), or that there existed an unidentified object or substance upon which she slipped. *Kimbrough v. Jewel Cos., Inc.*, 416 N.E.2d 328, 331 (Ill. App. Ct. 1981); (Def.'s Mem. 9). Here, Buchanan's shoe was caught in the Dixie cup after she slipped. It is not speculation to infer that the Dixie cup caused her to slip and injure herself. In making this finding, the Court emphasizes that, at the summary judgment stage, it views all evidence in the light most favorable to Buchanan and

draws all justifiable inferences in her favor. As a result of this analysis, the Court concludes that the jury must decide the issue of causation.

## IV. Conclusion

Based on the foregoing, the Court finds that Buchanan has put forth a sufficient amount of evidence to forfend Defendant's motion for summary judgment. Since genuine issues of material fact exist as to both the duty and causation elements of Buchanan's tort claim, the Court denies Defendant's motion for summary judgment.

**ENTER ORDER:**

*[signature]*
**MARTIN C. ASHMAN**
United States Magistrate Judge

Dated: May 27, 2009.